UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD C. BRINK,

               Petitioner,

    -vs-

DALE ARTUS,

               Respondent.

**DECISION AND ORDER**

**No. 08-CV-6073T**

_____

## I.   Introduction

*Pro se* Petitioner Richard C. Brink ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered April 20, 2004, in New York State, County Court, Livingston County, convicting him, after a jury trial, of Robbery in the First Degree (N.Y. Penal Law ("Penal Law") § 160.15[2]), Robbery in the Second Degree (Penal Law § 160.10[1]), Burglary in the First Degree (Penal Law § 140.30[1]), Unlawful Imprisonment in the Second Degree (Penal Law § 135.05), Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03[2]), and Petit Larceny (Penal Law § 155.25).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

### A.    Introduction

The charges arise out of an incident that occurred on December 11, 2002, in Avon, New York, wherein Petitioner, armed with a weapon, invaded the home of Susan O'Grady ("O'Grady" or "the victim") and took money and valuables.

### B.    Indictment & Pre-Trial

Petitioner was charged by a Livingston County Grand Jury with robbery in the first degree, robbery in the second degree, burglary in the first degree, unlawful imprisonment in the second degree, criminal possession of a weapon in the second degree, and petit larceny.

Prior to trial, a <u>Mapp</u>[1] hearing was conducted before the Honorable Ronald A. Cicoria.  Hearing Minutes [H.M.] 3-27.  In a written decision, the trial court denied Petitioner's motion to suppress the evidence seized by the police from Petitioner's vehicle.  <u>See</u> Decision and Order of the Livingston County Court (Hon. Ronald A. Cicoria), Ind. No. 2003-027, dated 11/18/03.

### C.    Trial

### 1.    The People's Case

On December 11, 2002, O'Grady and her dog were alone in her home located on Sutton Road in Avon, New York.  Because O'Grady was

---

[1]    <u>Mapp v. Ohio</u>, 367 U.S. 643 (1961).  A <u>Mapp</u> hearing is conducted to determine whether suppression of evidence obtained pursuant to a search or seizure by police officers is constitutionally warranted.

scheduled to work the night shift at her nursing job, she went to bed at around 3:00 p.m. that day. Before going to bed, she closed the shades in her bedroom and placed her cordless phone in the living room underneath a pillow so that it would not ring and wake her up. Trial Transcript [T.T.] 247-249.

Earlier that day, at around 12:30 p.m., 26-year-old Tina Green ("Green") went with her friend, 22-year-old Helen Irland ("Irland") to Petitioner's house. Petitioner asked Irland if she was interested in making some "fast cash" by robbing someone's home. Petitioner, Irland and Green then went into Petitioner's garage where he sawed off the barrel of a shotgun. Petitioner and Irland then tested the shotgun. T.T. 347-396.

At approximately 5:30 p.m. that same day, Petitioner, Irland and Green left Petitioner's house with the intent of finding a home to break into to collect valuables or money. T.T. 350, 398. The three individuals stopped at a shopping plaza where Green bought black gloves and Petitioner bought a license plate cover. T.T. 402-404. They then headed towards Avon, New York. Irland drove Petitioner's white Lincoln Navigator and eventually ended up on Sutton Road. T.T. 351-352, 398-399. Petitioner had with him duct tape, screwdrivers, and the sawed-off shotgun. T.T. 399. Petitioner observed O'Grady's home, and noted that it was a "nice house" and looked like no one was home. Petitioner and Green walked, arms linked, towards O'Grady's house. T.T. 353-354, 405-406.

Michelle Vanvoukenberg ("Vanvoukenberg"), O'Grady's neighbor, observed two people who matched the description of Petitioner and Green walking on Sutton Road at approximately 6:00 p.m. on December 11, 2002. T.T. 287-290.

In the back of O'Grady's home, Petitioner opened a window with a screwdriver, and entered her home. Once inside, Petitioner instructed Green to look for a phone. As Petitioner and Green walked towards the bedroom, they discovered that someone was home. T.T. 357-358.

O'Grady, after being awakened by her dog's barks and growls, heard Petitioner yell, "this is a home invasion" and "I am here to get your valuables." O'Grady began to scream when Petitioner approached. T.T. 250-252. She indicated to Petitioner that she had no valuables, but Petitioner persisted and asked if she had money. T.T. 359. O'Grady went to her purse, handed Petitioner $100 or $150, and Petitioner grabbed a loose $10 bill. O'Grady could not see Petitioner's face because the house was dark, but she noticed that he was a large man. T.T. 253-254. Petitioner then told O'Grady to get the telephone and give it to Green, which O'Grady did. Petitioner then instructed O'Grady to get back in her bedroom. There, Petitioner went through O'Grady's jewelry box and took various items. T.T. 261-262, 360. Petitioner then duct-taped the doorknob of the bedroom door to another doorknob so that O'Grady was unable to leave her bedroom. Once outside O'Grady's home, Green used Petitioner's cell phone to call Irland to come and

pick them up, which she did, and the three drove away.  T.T. 360, 410.

Shortly thereafter, O'Grady freed herself from the bedroom, found the telephone, and called the police.  T.T. 264, 285.

On December 12, 2002, at approximately 5:00 p.m., Petitioner gave 17-year-old Christopher Bray ("Bray") the sawed-off shotgun that was used in the invasion of O'Grady's home the preceding day. Bray and Petitioner had recently had a falling out, and Bray later used the same gun to shoot the rear window of Petitioner's Lincoln Navigator.  The police were alerted and subsequently confiscated the gun.  T.T. 301-308.

On December 21, 2002, a search warrant was executed on Petitioner's Lincoln Navigator.  Among other things, the police recovered a gold-colored metal heart-shaped earring belonging to O'Grady and a roll of duct tape.  T.T. 278, 436.

At the close of the People's case, the trial court issued a Sandoval[2] ruling from the bench, finding that Petitioner could be cross-examined on various prior convictions, including a rape conviction that was pending on appeal, if he chose to testify at trial.  T.T. 11, 452-462.

**2.   The Defense's Case**

John Rouse ("Rouse") testified that in late December of 2002, he was in Petitioner's Lincoln Navigator with Green and Irland and

---

[2]    People v. Sandoval, 34 N.Y.2d 371 (1974) (admissibility of prior convictions or proof of prior communication of specific criminal, vicious or immoral acts to impeach defendant's credibility).

Green told Rouse that she was a "gangster" and that she would tie people up and snatch their jewelry. Irland then told Rouse not to touch a bag that was in the car, and stated, "you don't want to know what's in there." T.T. 479-480.

Lori Brink, Petitioner's ex-wife, testified that Petitioner often permitted approximately six different people, including Irland, to drive his Lincoln Navigator and that he normally kept his cell phone in the console of the vehicle. She also testified that she worked with Petitioner at a car dealership and that he arrived at work on December 11, 2002 at approximately 5:00 p.m. and left at approximately 7:00 p.m. She testified that she called Petitioner on December 11, 2002 at approximately 8:00 p.m. and that Green answered Petitioner's cell phone. She also testified that she owned a pair of earrings similar to the one found in Petitioner's vehicle. Finally, she testified that she remained friends with Petitioner although they had been divorced for approximately thirteen years. T.T. 483-493.

### 3. The Prosecution's Rebuttal

The prosecutor showed Irland a video surveillance tape from the East Avon Sugar Creek Store, and Irland identified herself and Petitioner in that video. She noted that the time was 4:15 p.m. and that Petitioner was purchasing batteries. In another surveillance video taken from the Rush Sugar Creek Store at approximately 6:45 p.m., Irland identified herself and indicated that Petitioner and Green were outside in the car. T.T. 530-533.

Officer Michael Whitthuhn ("Officer Whitthuhn") of the Monroe County Sheriff's Office, testified that he monitored phone calls between Petitioner and Lori Brink from jail. In those conversations, Petitioner directed Lori Brink to go to his house and take CDs, DVDs, clothing and his dogs out of his house. T.T. 540-550.

### D. Verdict and Sentence

On February 5, 2004, Petitioner was found guilty as charged. T.T. 633-634.

On April 20, 2004, the trial court sentenced Petitioner to concurrent, determinate terms of twenty-five years imprisonment for the first degree burglary and robbery counts, concurrent, determinate terms of fifteen years imprisonment for the second degree robbery and criminal possession of a weapon counts, and one year imprisonment for the unlawful imprisonment and petit larceny, plus five years post-release supervision. Sentencing Minutes [S.M.] 11.

### E. Direct Appeal

Petitioner appealed his judgment of conviction, which was unanimously affirmed by the Appellate Division, Fourth Department on July 7, 2006. People v. Brink, 31 A.D.3d 1139 (4th Dept. 2006); lv. denied, 7.N.Y.3d 865 (2006).

### F. Collateral Motions

On December 23, 2005, Petitioner filed a *pro se* motion to vacate the judgment pursuant to New York Criminal Procedure Law

("C.P.L.") § 440.10, which was denied by the county court on state procedural grounds. See Decision and Order of the Livingston County Court (Hon. Joan S. Kohout), Ind. No. 2003-027, dated 04/07/06 (Resp't Ex. M). Petitioner appealed the denial of his motion, which was denied by the Appellate Division, Fourth Department on November 17, 2006. See Order of the Appellate Division, Fourth Department (Hon. Robert G. Hurlbutt), Ind. No. 2003-027, dated 11/17/06 (Resp't Ex. P).

On January 31, 2007, Petitioner filed a *pro se* application for a writ of error coram nobis with the Appellate Division, Fourth Department, which was summarily denied on April 20, 2007. Brink, 39 A.D.3d 1285 (4th Dept. 2007). On June 4, 2007, Petitioner appealed the denial, which was denied by the New York State Court of Appeals. Brink, 9 N.Y.3d 873 (2007).

**G.   The Habeas Corpus Petition**

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) he was deprived of his Sixth Amendment right to compulsory process when the trial court denied his request to present an alibi witness; (2) various state law errors; (3) prosecutorial misconduct; (4) ineffective assistance of trial counsel; (5) ineffective assistance of appellate counsel; and (6) a Fourth Amendment violation. Petition [Pet.] ¶19

(Dkt. #1); Addendum [Add.] to Pet. (Dkt. #6); Traverse/Reply [Tv.]
(Dkt. #24).[3]

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act
("AEDPA"), a federal court may grant habeas relief to a state
prisoner only if a claim that was "adjudicated on the merits" in
state court "resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States," 28 U.S.C. § 2254(d)(1), or if it "was based on an
unreasonable determination of the facts in light of the evidence
presented in the state court proceeding." § 2254(d)(2).  A state
court decision is "contrary to" clearly established federal law "if
the state court arrives at a conclusion opposite to that reached by
[the Supreme Court] on a question of law or if the state court
decides a case differently than [the Supreme Court] has on a set of
materially indistinguishable facts."  <u>Williams v. Taylor</u>, 529 U.S.

<hr/>

[3]     Subsequent to the filing of Petitioner's Traverse/Reply on May 14,
2009, Petitioner filed with this Court a Motion to Stay, which was denied,
with prejudice, by the Hon. Victor E. Bianchini by Decision and Order on March
15, 2010.  Dkt. #26.  Shortly thereafter, Petitioner filed a lengthy document
captioned "Objections" to the Court's March 15, 2010 Decision and Order
denying, with prejudice, his Motion to Stay.  Subsequently, Petitioner filed a
motion, which is currently pending disposition before this Court, in which he
seeks permission to file an additional memorandum of law with respect to the
habeas corpus petition.  The Court notes that Petitioner has filed an 87-page
habeas corpus petition, a 14-page Addendum to the petition, and a 4-page
Traverse/Reply, wherein he reiterates, in sum and substance, the same
arguments.  Based on the size and number of these pleadings, the Court finds
that there is sufficient information for it to analyze Petitioner's habeas
claims and, therefore, denies Petitioner's motion seeking permission to file a
memorandum of law in regard to the instant habeas corpus petition.

362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. <u>Williams</u>, 529 U.S. at 412; <u>accord</u> <u>Sevencan v. Herbert</u>, 342 F.3d 69, 73-74 (2d Cir. 2002), <u>cert. denied</u>, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>id.</u> at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see</u>

also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

## IV. Petitioner's Claims

### 1. Denial of Right to Present an Alibi Witness

In ground one of the habeas petition, Petitioner contends that he was deprived of his Sixth Amendment right to compulsory process

when the trial court denied his request to present an alibi witness, to wit, Dawn Bailey ("Bailey"). He argues that Bailey would have testified that Petitioner was working with her at a car dealership at the time the crime was committed. Pet. ¶19, 10-13. Petitioner raised this claim on direct appeal, and it was rejected on the merits. <u>Brink</u>, 31 A.D.3d 1141.

A trial court's determination to exclude a criminal defendant's alibi witness, for failing to give notice timely of an alibi defense, implicates the Sixth Amendment compulsory process clause. <u>See</u> <u>Taylor v. Illinois</u>, 484 U.S. 400, 410 (1988). In <u>Taylor</u>, the Supreme Court explained that:

> [a] trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial. If that explanation reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony.

<u>Taylor</u>, 484 U.S. at 415.

In the instant case, the trial court did not use the word "willful" in discussing the reasons why it denied Petitioner the right to assert an alibi defense. <u>See, e.g.</u>, <u>Noble v. Kelly</u>, 246 F.3d 93, 100 (2d Cir. 2001). However, the tenor of the court's comments to the parties made clear that Petitioner's failure to make mention of Bailey as an alibi witness until very late in the

trial proceedings (i.e., the day of the trial) was not an oversight and, if allowed to assert the defense with regard to Bailey, would unfairly permit the defense to gain a tactical advantage over the prosecution. T.T. 22.

The record reflects that the People filed a notice of demand for Petitioner's alibi witnesses on February 5, 2003, and it was not until nine months later in December 2003 that Petitioner filed his first late notice informing the People he intended to call Lori Brink as an alibi witness. Over the People's objection, the trial court granted Petitioner's request to put forth his late alibi defense. Then, on the day of the trial, Petitioner requested permission to file a second late notice of alibi regarding Bailey. On the record, defense counsel indicated that he had never spoken to Bailey because she did not have a phone and had not shown up for her appointment with him. T.T. 17-22.

The Court finds that the trial court did not violate Petitioner's Sixth Amendment right when it denied his second late application to assert an alibi defense. The trial court properly exercised its discretion to deny the application based on the following: the lateness of the notice, the failure to inform the People of Bailey at the same time he informed it of Lori Brink, counsel's inability to contact Bailey, and that Bailey's testimony would have been cumulative to Lori Brink's testimony. By denying Petitioner's application, the trial court ensured that the integrity of the trial process would not be jeopardized and that

the prosecution would not be prejudiced.  Accordingly, the state court's determination of this issue was neither contrary to nor an unreasonable application of settled Supreme Court law.  The claim is dismissed.

## 2.   Alleged State Law Errors

In grounds two, three, six, and seven of the petition, Petitioner argues that the county court made numerous state law errors during his trial, including, *inter alia*, that he was prejudiced by evidence of prior uncharged crimes and bad acts and that the trial court's jury instructions were improper.  Petitioner argues that these errors deprived him of his constitutional right to a fair trial.  Pet. ¶19, 10-21, 37-44.  Petitioner raised these claims on direct appeal, and they were rejected on the merits. <u>Brink</u>, 31 A.D.3d at 1140-1.

Generally, alleged errors of state law are not cognizable on habeas review.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1992). Here, Petitioner has not demonstrated that any of the alleged errors were, in fact, violative of state law.  <u>See, e.g.,</u> <u>Brooks v. Artuz</u>, 97 CIV. 3300 (JGK), 2000 U.S. Dist. LEXIS 1507, *16 (S.D.N.Y. Oct. 17, 2000) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude); <u>see</u> <u>also</u> <u>Taylor v. Curry</u>, 708 F.2d 886, 891 (2d Cir. 1983)("Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus.  Rather, the writ would issue only where

petitioner can show that the error deprived her of a fundamentally fair trial."); accord Rosario v. Kuhlman, 839 F.2d 918 (2d Cir. 1988).

As discussed below, Petitioner has failed to demonstrate that either of the alleged state law errors were violative of state law, let alone violative of the federal constitution.

**(1)   Evidence of Prior Uncharged Crimes and Bad Acts**

Petitioner argues that at several points throughout his trial he was prejudiced by evidence introduced of prior uncharged crimes and bad acts.  To support this contention, Petitioner points to, *inter alia*, the introduction of Bray's testimony on re-direct examination and the testimony of Lori Brink on cross-examination. Pet. ¶19, 14-24, 41-44.

Under New York law, evidence of uncharged crimes or prior bad acts is admissible if relevant to issues such as intent, motive, and identity.  People v. Alvino, 71 N.Y.2d 233, 241-42 (1987). Additionally, the prosecution may introduce evidence if it is necessary to complete the narrative of events, or if it is relevant to the victim's, or a witness's, credibility.  See People v. Steinberg, 170 A.D.2d 50, 73-5 (1st Dept. 1991) (uncharged crime evidence may be used to support testimony that otherwise might be unavailable or suspect).

First, Petitioner argues that he was prejudiced when Bray was allowed to testify on re-direct examination that he had heard that

Petitioner was looking for him and was going to kill him for breaking into Petitioner's house. T.T. 315-317.

Contrary to Petitioner's assertion, Bray's testimony was admissible because defense counsel had opened the door on Bray's cross-examination by eliciting testimony that there had been a falling out between Petitioner and Bray. T.T. 311-313. Thus, the prosecutor was properly permitted to clarify on re-direct examination why Petitioner and Bray had a "falling out." T.T. 317. Furthermore, Bray's testimony also evinced a motive for shooting the window out of Petitioner's car, which eventually led the police to the sawed-off shotgun used in the crime. In short, the probative value of Bray's testimony outweighed the possible prejudice to Petitioner, and the trial court did not abuse its discretion by allowing introduction of Bray's testimony at trial.

Next, Petitioner argues that the trial court permitted the prosecutor to improperly cross-examine Petitioner's ex-wife, Lori Brink, with respect to her having gone to Petitioner's home after he was arrested to pick up alleged stolen property. Pet. ¶19, 22-24.

New York law provides that, subject to certain limitations, witnesses may be cross-examined about any immoral, vicious, or criminal act which may reflect on their own character and show them to be unworthy of belief, provided the cross-examiner questions in good faith and upon a reasonable basis in fact. See People v. Duffy, 36 N.Y.2d 258 (1975); see also People v. Whitehead, 142

A.D.2d 745, 746 (3d Dept. 1988) (where the character and credibility of a witness, and not the defendant, was questioned and the witness's testimony was not directly probative of defendant's guilt or innocence, there was little prejudicial impact on defendant).

In the instant case, the trial court acted within its discretion when it allowed the prosecutor to cross-examine Lori Brink regarding her participation in trying to hide property taken from Petitioner's home. This testimony was relevant to show that Lori Brink was on friendly terms with Petitioner, had tried to protect Petitioner in the past and, therefore, her alibi testimony was questionable. Moreover, to the extent Lori Brink's testimony was not probative of Petitioner's guilt in the case, it had little, if any, prejudicial impact on him. Accordingly, Petitioner has failed to demonstrate an error of state law, and the claim is, therefore, dismissed.

### (2) Improper Jury Instructions

Petitioner claims that the court erred in not instructing the jury, *inter alia*, that: (1) Bray was Petitioner's accomplice; and (2) that even if the jury did not find alibi witness Lori Brink's testimony to be credible, it could still find Petitioner not guilty. Pet. ¶19, 37-38, 40-41.

As a general matter, "in order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's

instruction to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." <u>Casillas v. Scully</u>, 769 F.2d 60, 63 (2d Cir. 1985); <u>see also</u> <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973). The standard on a habeas corpus petition is "quite different" from the standard on direct review of proceedings in a federal criminal case. <u>Rogers v. Carver</u>, 833 F.2d 379, 381 (1st Cir. 1987), <u>cert. denied</u>, 485 U.S. 937 (1988). The habeas petitioner has the burden of meeting a very high standard –- "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." <u>Naughten</u>, 414 U.S. at 147; <u>see also</u> <u>Pawlowski v. Kelly</u>, 932 F. Supp. 475, 482 (W.D.N.Y. 1992).

Regarding Petitioner's first contention, Bray was not an accomplice. Under New York law, an "accomplice" is defined as "a witness in a criminal action, who, according to the evidence adduced in such action, may reasonably be considered to have participated in: (a) the offense charged; or (b) an offense based upon the same or some of the same facts or conduct which constituted the offense charged." Penal Law § 60.22.

Here, there was no evidence that Bray had any knowledge of, or that he participated in, the burglary of O'Grady's home. Bray's testimony dealt almost exclusively with events that occurred after the burglary was completed. T.T. 299-329. Bray testified that

Petitioner gave him the sawed-off shotgun on December 12, 2002, the day after the burglary. T.T. 300. There was no testimony as to why Petitioner gave Bray the gun. Thus, there was nothing to establish that Bray was, in any way, involved in the burglary of O'Grady's home. Moreover, the fact that Bray committed unrelated burglaries, possibly with Petitioner, is irrelevant to having charged him as an accomplice in the instant case. Because there was no evidence to support a claim that Bray was, in fact, an accomplice, the Court cannot find that the trial court erred in failing to instruct the jury on the concept of accomplice liability.

Similarly, the Court rejects Petitioner's contention that the trial court erred in failing to instruct the jury that even if it disbelieved alibi witness Lori Brink, it could still find Petitioner not guilty. A review of the record reflects that, in its jury instruction, the trial court repeatedly informed the jury that the burden of proof remained on the People and that even if the testimony of Lori Brink did not create a reasonable doubt, the jury must still determine whether the People proved every element of Petitioner's guilt beyond a reasonable doubt. T.T. 618-619. The jury is presumed to have followed these instructions. See United States v. Pforzheimer, 826 F.2d 200, 205 (2d Cir. 1987) ("It is a fundamental proposition that a jury is presumed to follow the jury instructions of the trial judge."). There is nothing on the

record, nor has Petitioner pointed to anything outside the record, that suggests the jury did not do so.

With respect to both contentions, Petitioner has failed to set forth an error of state law, let alone an error of a constitutional dimension. See, e.g., Folger v. Conway, 443 F.Supp.2d 438, 452 (W.D.N.Y. 2006). Accordingly, this claim is dismissed.

### 3. Ineffective Assistance of Trial Counsel

In grounds ten and eleven[4] of the petition, Petitioner argues that he was denied the effective assistance of trial counsel based on, *inter alia*, the following: (1) filing an insufficient suppression motion; (2) failure to object to the court's Sandoval ruling; (3) failure to familiarize himself with discovery materials; and (4) that Petitioner was prejudiced by counsel's closing statement. Pet. ¶19, 53-85. Petitioner raised this claim on direct appeal, and it was rejected on the merits. The Appellate Division, Fourth Department, determined that, "[Petitioner] failed to demonstrate the absence of strategic or other legitimate explanations for . . . counsel's alleged shortcomings." Brink, 31 A.D.3d at 1141 (internal citations and quotations omitted).

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that

---

[4] This ground is misnumbered in the habeas corpus petition as "Prayer X." Pet. ¶19, 85. It is the eleventh ground for habeas relief, and the Court will refer to it as such throughout this Decision and Order.

(2) this deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different.  <u>Id.</u> at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding."  <u>Id.</u>  To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689.  A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," <u>id.</u>, and may not second-guess defense counsel's strategy. <u>Id.</u> at 690.

The Court finds that Petitioner has failed to demonstrate that his trial counsel's conduct was deficient within the meaning of <u>Strickland</u>, and that, but for the deficiency, the result of his trial would likely have been different.

**(1)  Filing of Insufficient Suppression Motion**

Petitioner argues that counsel's suppression motion was insufficient, characterizing it as "bare bones" and "vague" in nature.  Pet. ¶19, 55.

The record reflects that counsel moved for a suppression hearing, which was granted. There, counsel adequately contested the legality of the seizure of physical evidence from Petitioner's vehicle. H.M. 3-27. Regardless of the brevity or allegedly "vague" nature of counsel's suppression motion, Petitioner cannot demonstrate that he was prejudiced by counsel's conduct because he was ultimately granted a suppression hearing. This claim, therefore, provides no basis for habeas relief and is dismissed.

**(2) Failure to Object to the Trial Court's <u>Sandoval</u> Ruling**

Petitioner contends that counsel was ineffective for failing to object to the trial court's <u>Sandoval</u> ruling insomuch as the court ruled that Petitioner could be questioned about a rape conviction that was pending on appeal. Pet. ¶19, 74-75.

Contrary to Petitioner's contention, the record reflects that counsel initially opposed cross-examination of the rape conviction, and, after the trial court ruled against Petitioner, Petitioner himself alerted the trial court that said rape case was currently pending on appeal. T.T. 452-468.

In any event, Petitioner cannot show that he was prejudiced by counsel's alleged failure to object to the adverse ruling insomuch as Petitioner ultimately chose not to testify at trial. Petitioner's failure to do so is fatal to his claim. <u>See</u> <u>Peterson v. LeFevre</u>, 753 F. Supp. 518, 521 (S.D.N.Y. 1991), <u>aff'd mem.</u>, 940 F.2d 649 (2d Cir. 1991) ("It is well settled that a [habeas]

petitioner's failure to testify [at trial] is fatal to any claims of constitutional deprivation arising out of a <u>Sandoval</u> type ruling because, in the absence of such testimony the Court has no adequate non-speculative basis upon which to assess the merits of the claim."); <u>see</u> <u>also</u> <u>Luce v. United States</u>, 469 U.S. 38, 43 (1984) ("[T]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify.").

Additionally, the Court notes that, as part of its <u>Sandoval</u> ruling, the trial court also determined that Petitioner could be cross-examined with a prior felony drug conviction and a prior grand larceny conviction. To that extent, the Court finds Petitioner's contention related to the rape conviction unavailing, as it is unlikely that Petitioner would have taken the stand. This claim also provides no basis for habeas relief and is dismissed.

### (3) Failure to Familiarize Himself with Discovery Materials

Petitioner argues that trial counsel was ineffective for failing to familiarize himself with and use discovery materials, including, *inter alia*, a report stating that the items taken from Petitioner's home were not stolen and a report listing items seized from Irland's vehicle. Pet. ¶19, 78-79.

At the outset, the Court notes that there is nothing on the record -- nor has Petitioner pointed to anything outside the record -- that suggests that counsel, in fact, failed to properly familiarize himself with the discovery materials.

In any event, a criminal defendant does not have an absolute right to dictate the defense strategy to be followed in his case. See Jones v. Barnes, 463 U.S. at 751 (stating that tactical decisions are left to counsel's professional judgment); see also Faretta v. California, 422 U.S. 806, 820 (1975) (noting that "when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy"). In the instant case, counsel's decision not to use these documents at trial most likely stemmed from his desire to not inform the jury that Petitioner was part of a string of burglaries that were being prosecuted, especially since this information could have potentially opened the door to questions about these cases. The Court, therefore, cannot find that Petitioner's strategic decision not to use certain discovery materials was unreasonable under the circumstances. The claim is dismissed.

**(4)  Prejudicial Closing Statement**

Petitioner contends that trial counsel's closing statement was not persuasive, failed to raise important issues, and that counsel did not profess Petitioner's innocence. Pet. ¶19, 81-84.

Contrary to Petitioner's contention, the record reflects that counsel zealously represented Petitioner in his closing statement. In a cogent, well-articulated summation, counsel summarized the evidence piece by piece and pointed out to the jury the weaknesses

in the prosecution's case.  Although counsel did not specifically profess Petitioner's innocence, he reminded the jury that it could only convict Petitioner if -- and *only if* -- it determined guilt beyond a reasonable doubt of "every element [sic] of every crime charged in the indictment."  T.T. 567.  Viewed as whole, counsel's closing statement was persuasive, urging the jury to carefully consider and weigh the evidence before it, and that the People had the burden to prove Petitioner's guilt by competent evidence and beyond a reasonable doubt.

In sum, this Court finds that, overall, Petitioner was provided with competent, effective representation.  The state court's determination of this issue was not contrary to nor an unreasonable application of settled Supreme Court law.  Petitioner's claim that he received ineffective assistance of trial counsel presents no grounds for habeas relief.  The claim is dismissed.

**4.  Ineffective Assistance of Appellate Counsel**

In his addendum to the petition, Petitioner contends that he received ineffective assistance of appellate counsel because counsel failed to raise, *inter alia*, the following issues on direct appeal:  (1) there was insufficient evidence to prove that Petitioner carried a gun; (2) Petitioner's sentence violated the Eighth Amendment; and (3) Petitioner was denied his constitutional right to testify because of the trial court's erroneous <u>Sandoval</u>

ruling.  Add., 3-14.  Petitioner raised this claim in his coram nobis application, which was summarily denied by the Appellate Division, Fourth Department.  Brink, 39 A.D.3d 1285 (4th Dept. 2007).  Summary denial of Petitioner's motion constitutes an adjudication on the merits of this claim.  Sellen v. Kuhlman, 261 F.3d 303, 311-12 (2d Cir. 2001).

The Strickland standard of ineffective assistance of counsel, as discussed under "Section IV, 2" above, applies equally to trial and appellate counsel.  See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S. 820 (1994).  Moreover, counsel is not required to raise all colorable claims on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983).  Rather, counsel may winnow out weaker arguments and focus on one or two key claims that present "the most promising issues for review." Id. at 751-753. And, of course, counsel is "strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 689-90.

The Court finds that Petitioner has failed to demonstrate that his appellate counsel's conduct was deficient within the meaning of Strickland, and that, but for the deficiency, the result of his appeal would likely have been different.

Here, Petitioner argues that he received ineffective assistance of appellate counsel because counsel submitted a

"deficient" brief that raised only eight issues, some or all of which were unpersuasively argued.  Add., 2.  As a result of this deficiency, he argues that he was "required" to file his own *pro se* brief to raise additional claims and to supplement those that counsel inadequately argued in his brief.  Id.  This claim fails for several reasons.  First, counsel is not required to raise all colorable claims on appeal.  See Jones v. Barnes, 463 U.S. 745, 751 (1983).  Counsel may winnow out weaker arguments and focus on those that present "the most promising issues for review."  Id. at 751-53.  The record reflects that appellate counsel did just that.  He submitted a thorough, well-researched brief in which he persuasively argued eight issues, several of which Petitioner adopted in his habeas corpus petition.  See Appellant's Br. on Appeal, Points I-VIII (Resp't Ex. A).  Second, Petitioner cannot show prejudice under Strickland with regard to issue (1) listed above to the extent that Petitioner raised it himself in his *pro se* brief on appeal, and it was reviewed and rejected on the merits by the Appellate Division, Fourth Department.  See Appellant's *Pro Se* Br. on Appeal, Points VI, XI (Resp't Ex. C);  Brink, 31 A.D.3d at 1141.  Finally, the claim also fails to the extent that each of the underlying issues supporting Petitioner's ineffective assistance of appellate counsel claim lack merit.  Appellate counsel cannot be faulted for failing to raise non-meritorious issues.  United States

v. Arena, 180 F.3d 380, 396 (2d Cir. 1999), cert. denied, 531 U.S. 811 (2000).

### (1) Failure to Raise Insufficiency of Evidence Claim

Petitioner argues that he received ineffective assistance of appellate counsel because counsel failed to raise an insufficiency of the evidence claim regarding the first degree burglary and robbery charges. Add., 10-12. In particular, he claims that the prosecution failed to prove beyond a reasonable doubt that Petitioner carried a weapon when he unlawfully entered O'Grady's home and stole her property.[5] The record, however, belies this claim. First, both Irland and Green testified that they observed Petitioner saw off the barrel of a shotgun. Second, Green testified that she gave that shotgun to Petitioner once inside O'Grady's home. T.T. 347-396. This testimony was corroborated by the gun itself, which was recovered from Bray, who testified that Petitioner had given him that gun the day after the robbery. T.T. 300-308. Thus, there was sufficient evidence for the jury to find that Petitioner carried a weapon when he burglarized O'Grady's

---

[5]    "A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . is armed with a deadly weapon[.]" Penal Law § 160.15[2]

    "A person is guilty of burglary in the first degree when he knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he or another participant in the crime [sic] [i]s armed with explosives or a deadly weapon[.]" Penal Law § 140.30[1].

home.  Accordingly, appellate counsel cannot be faulted for raising this non-meritorious issue.

**(2)  Failure to Argue Sentence Violated 8th Amendment**

Next, Petitioner argues that he received ineffective assistance of appellate counsel because counsel failed to argue on direct appeal that Petitioner's sentence violated his Eighth Amendment right against cruel and unusual punishment.  Add., 8-9. The record reflects that counsel did argue that Petitioner's sentence was harsh and excessive, although he refrained from arguing that the sentence violated Petitioner's Eighth Amendment rights.  See Appellant's Br. on Appeal, Point VIII.  Appellate counsel's decision to refrain from doing so was not unreasonable given that the Eighth Amendment's prohibition against cruel and unusual punishment "forbids only extreme sentences which are 'grossly disproportionate' to the crime."  Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (quoting Solem v. Helm, 463 U.S. 277, 288 (1983); see also United States v. Yousef, 327 F.3d 56, 163 (2d Cir. 2003) (stating that lengthy prison sentences do not violate the Eighth Amendment's prohibition against cruel and unusual punishment if the sentence is based on a proper application of the sentencing guidelines or statutes).  Here, Petitioner's sentences falls within the permissible statutory range set by New York law.  See Penal Law §§ 70.00, 70.15.  Thus, there was no basis for appellate counsel to raise this claim.

**(3) Failure to Argue that Petitioner was Denied his Constitutional Right to Testify**

Additionally, Petitioner argues he received ineffective assistance of appellate counsel because counsel failed to argue on direct appeal that Petitioner was denied his constitutional right to testify as a result of the trial court's erroneous <u>Sandoval</u> ruling. As discussed under "Section IV, 2, (2)" above, this claim is meritless. The Court cannot find that appellate counsel's failure to raise a non-meritorious issue was unreasonable. <u>See United States v. Arena</u>, 180 F.3d at 396.

Overall, the record reflects that Petitioner received competent, effective representation from appellate counsel. Accordingly, the Court finds that the state court reasonably applied federal law in determining that appellate counsel's representation was not constitutionally infirm. The claim is dismissed.

**5.  Prosecutorial Misconduct**

In grounds four, five, seven, eight, and nine of the petition, Petitioner argues that prosecutorial misconduct deprived him of his constitutional right to a fair trial. He bases this claim on, *inter alia*, the prosecutor's mischaracterization of witness testimony during summation. Pet. ¶19, 41-53. Petitioner raised this claim on direct appeal, and it was rejected on the merits. <u>Brink</u>, 31 A.D.3d at 1140.

In order to obtain habeas relief based upon the misconduct of a prosecutor, "[i]t is not enough that the prosecutor's remarks were undesirable or even universally condemned." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted). Rather, a constitutional violation will be found only when the prosecutor's remarks "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Gonzalez v. Sullivan</u>, 934 F.2d 419, 424 (2d Cir. 1991) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)). Moreover, a prosecutor's remarks during summation are grounds for reversal "only when the remarks caused 'substantial prejudice' to the defendant." <u>Id.</u> (citations omitted). Whether the comments caused substantial prejudice to the petitioner is to be assessed by considering "'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.'" <u>Floyd v. Meachum</u>, 907 F.2d 347, 355 (2d Cir. 1990) (quoting <u>United States v. Modica</u>, 663 F.2d 1173, 1181 (2d Cir. 1981), <u>cert. denied</u>, 456 U.S. 989 (1982)).

Petitioner argues that, on summation, the prosecution mischaracterized the testimony of witnesses Vanvoukenberg, Rouse, and Officer Whitthuhn. Pet. ¶19, 46-52.

Here, the prosecutor's characterization of the witness' testimony on summation was not improper and did not amount to a constitutional infirmity. Rather, the prosecutor's comments were

based on the trial evidence and/or were fair comment on the evidence presented. See Darden, 477 U.S. 182-3.

First, Petitioner claims that the prosecutor misrepresented Vanvoukenberg's testimony when he stated that her testimony placed Petitioner in East Avon at the time of the crime. Pet. ¶19, 46-47. Although Vanvoukenberg testified that she could not specifically identify Petitioner and Green, her description of the individuals she saw on the day of the crime in East Avon matched that of Petitioner and Green. Thus, it was fair comment for the prosecutor to urge this conclusion in his summation.

Second, Petitioner argues that the prosecutor mischaracterized the testimony of Rouse with respect to what Green and Irland had told him about their prior criminal activity with Petitioner.[6] Pet. ¶19, 47-50. *Assuming arguendo*, that said characterization was

---

[6]     The relevant portion of the prosecutor's summation is as follows:

Prosecutor: Hey how about John Rouse? The defense witness John Rouse, driving with Tina and Helen. They told about doing a house invasion. Who did she say they did it with? Helen said her brother. Who do we know she calling her brother? The defendant, the leader.

Defense:    Objection, your Honor. I don't recall that as being the testimony that was given to the Court.

Prosecutor: It was.

The Court:  I believe the testimony was that they were bragging about some jobs or house invasions and they did mention the defendant specifically. I don't know if the testimony was that they all did it together, but the context was something about criminal activity and his name was mentioned in some sort of context. We'll leave it at that.

Prosecutor: Your memory will certainly control.

T.T. 579.

improper, the trial court, upon the objection of the defense, issued a curative instruction.  T.T. 579.  Notably, after this curative instruction, the prosecutor himself reminded the jury that it was the jury's recollection of the testimony that would control its decision.  T.T. 579.  Thus, this Court cannot find that Petitioner was prejudiced by the prosecutor's characterization of Rouse's testimony.

Finally, Petitioner claims that the prosecutor mischaracterized Officer Whitthuhn's testimony by stating that Officer Whitthuhn had heard Petitioner tell Lori Brink to retrieve specific property from his home.  Pet. ¶19, 50-52.  The record belies this claim.  The record shows that Officer Whitthuhn testified on re-direct examination as follows: "[n]early one of his first phone calls that Mr. Brink made to Mrs. Brink, in their conversation was for her -- he was directing her to remove her personal property from his house on Angle Street."  T.T. 550.  When asked what specific property, Whitthuhn answered, "video cassettes, some clothing and his dogs."  Id.  The prosecutor's comment on summation to this effect regarding Whitthuhn's testimony, therefore, was a fair reflection of the actual testimony heard at trial.

In sum, the Court finds that none of the prosecution's comments or actions were improper, and therefore could not have infected the trial with unfairness, thereby depriving Petitioner of his constitutional right to due process of law.  *Assuming arguendo*,

that the prosecutor's comments were improper, the evidence of
Petitioner's guilt was overwhelming such that the outcome of
Petitioner's trial would not have been different absent the alleged
misconduct. See, e.g., Modica, 663 F.2d at 1181, cert. denied, 456
U.S. 989 (1982) (holding that "if proof of guilt is strong, then
the prejudicial effect of the [prosecutor's] comments tends to be
deemed insubstantial"); see also Strouse v. Leonardo, 928 F.2d
548, 557 (2d Cir. 1991) ("Moreover, we believe that absent the
alleged misconduct, given the overwhelming evidence of Strouse's
guilt, he still would have been convicted."); accord, e.g.,
Norwood v. Artis, 487 F.Supp.2d 321, 332 (W.D.N.Y. 2007).

Accordingly, the state court's determination of this issue was
neither contrary to nor an unreasonable application of settled
Supreme Court law and the claim is dismissed.

**6. Fourth Amendment Claim**

In ground eleven of the petition, Petitioner contends that the
hearing court erred in not suppressing evidence seized from his
vehicle. Pet. ¶19, 85-87. Petitioner raised this claim on direct
appeal, and it was rejected on the merits. Brink, 31 A.D.3d at
1141. Although the claim has been properly exhausted in the state
courts, it is barred from habeas review by this Court.

"Where the State has provided an opportunity for full and fair
litigation of a Fourth Amendment claim, a state prisoner may not be
granted habeas corpus relief on the ground that evidence obtained
in an unconstitutional search or seizure was introduced at his

trial." Stone v. Powell, 428 U.S. 465, 494 (1976) (footnotes omitted). The Second Circuit has noted that Stone requires only that "the state have provided the opportunity to the state prisoner for full and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir. 1977) (en banc), cert. denied, 434 U.S. 1038 (1978). A Federal court may undertake habeas review only in one of two instances: (1) "if the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process. . . ." Id. at 840; accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983). Here, New York clearly affords defendants the requisite corrective procedures. See C.P.L. § 710.10 et seq.; see also Capellan, 975 F.2d at 70 (noting that federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in C.P.L. § 710.10 et seq. as being facially adequate).

Here, Petitioner may not raise his Fourth Amendment claim on habeas review because he was provided with, and indeed took full

advantage of, the opportunity to fully adjudicate this matter in state court at a pre-trial suppression hearing.

Moreover, Petitioner has not demonstrated that an "unconscionable breakdown" occurred in the courts below. His dissatisfaction with the determination arrived at by the trial court, and affirmed by the Appellate Division, does not constitute the sort of "breakdown" referred to in Gates v. Henderson. Rather, an "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." Cappiello v. Hoke, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), aff'd, 852 F.2d 59 (2d Cir. 1988) (per curiam); accord, Capellan, 975 F.2d at 70 (observing that some sort of "disruption or obstruction of a state proceeding" of an egregious nature, e.g., the bribing of a trial judge, typifies an unconscionable breakdown). No such disruption is discernable on the record. And, even if the state court erroneously decided the issue, a petitioner cannot gain federal review of a Fourth Amendment claim simply because a Federal court may reach a different result. See Capellan, 975 F.2d at 71.

Thus, the Court is precluded from considering Petitioner's fully litigated Fourth Amendment claim on habeas review. The claim is dismissed.

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2),  I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    July 6, 2010
          Rochester, New York